IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HOCKEYTECH, INC., § <br> HOCKEYTECH USA, LLC, and § <br> FLOSPORTS, INC. § <br> § <br> v. § <br> § <br> MARC RUSKIN and HOCKEY § <br> TECHNOLOGY PARTNERS, LLC § | CIVIL ACTION NO. 1:23-cv-01495-DII |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs HockeyTech, Inc., HockeyTech USA, LLC ("HockeyTech USA") (collectively "HockeyTech"), and FloSports, Inc. ("FloSports") file this Amended Complaint against Defendants Marc Ruskin and Hockey Technology Partners, LLC ("Hockey Technology") and for cause of action would show the Court as follows:

**INTRODUCTION**

1.      Defendants have launched and are operating a copy-cat company that wholly consists of trademarks, trade names, trade dress, trade secrets, and business relationships they poached from Plaintiffs.

2.      Ruskin was previously President of HockeyTech, which was then the world's largest live and on-demand hockey streaming platform and sports-data provider. After he left HockeyTech, he worked as a part-time advisor to FloSports and helped to expand FloSports' hockey streaming business, FloHockey. Then in 2021, Ruskin advised FloSports in its purchase of HockeyTech.

3.       After several years of failed attempts at other business ventures, Ruskin brought to market a competing hockey streaming and statistics platform—Hockey Technology—which looks almost identical to HockeyTech, infringes on its trademarks, names and trade dress, and is confusing customers who believe Defendants are affiliated with Plaintiffs. To pull off this heist, Defendants

hired away Ruskin's former HockeyTech and FloSports colleagues to assist him in building a copy of the Plaintiffs' websites and mobile apps. Defendants are selling those products to the hockey leagues, organizations, and teams (known as "rights holders") with which Plaintiffs have current or prospective contracts to license hockey games and content and to provide scoring software. They are interfering with Plaintiffs' current and prospective business relationships.

4. Defendants' infringement on Plaintiffs' intellectual-property rights, theft of trade secrets, unjust enrichment, and tortious interference have caused and continue to cause Plaintiffs grave and irreversible harm to their business, loss of goodwill, and other injury and damages.

## PARTIES

5. Plaintiff HockeyTech is a Delaware corporation with its principal place of business located at 301 Congress Avenue, Suite 1500, Austin, Texas 78701-2960.

6. Plaintiff HockeyTech USA is a Delaware limited liability company with its principal place of business located at 301 Congress Avenue, Suite 1500, Austin, Texas 78701-2960.

7. Plaintiff FloSports is a Delaware corporation with its principal place of business located at 301 Congress Avenue, Suite 1500, Austin, Texas 78701-2960.

8. Defendant Marc Ruskin resides in Needham, Massachusetts and has appeared in this suit.

9. Defendant Hockey Technology Partners, LLC is a Massachusetts limited liability company doing business in Texas and Massachusetts and has appeared in this suit.

## VENUE/JURISDICTION

10. Venue is proper in this District because the events or omissions giving rise to the claim occurred in Travis County and under 28 U.S.C. § 1441(a), Plaintiffs sued in the 201st Travis County District Court, which is located in the Western District of Texas.

11.     This Court has original subject-matter jurisdiction of this suit under 18 U.S.C. § 1836(c) and 15 U.S.C. § 1121 and pursuant to its removal jurisdiction in 28 U.S.C. § 1441.

12.     The Court has personal jurisdiction over Defendants because they have personally availed themselves of the privileges and benefits of conducting business in Texas. The claims all arise from Defendant Ruskin's work for Texas-based FloSports and his involvement in advising FloSports during its acquisition of HockeyTech. During his work with FloSports, Ruskin obtained insider knowledge and possession of Plaintiffs' confidential business strategy, information, and marks through his dealings with Texas-based FloSports, which involved repeated travel to Texas on FloSports business, including visiting FloSports' Austin headquarters at least three times to meet with FloSports employees and to Dallas, Texas to attend meetings with FloSports' current and prospective rights holders. FloSports' trade secrets, Marks, and trade names that Defendants stole were located in Texas, and Defendants obtained them through their communication and contact with FloSports in Texas.

13.     Further, Defendants have leveraged Plaintiffs' information and marks to tortiously interfere with FloSports' business relationships that have a nexus with Texas. For example, Defendants have targeted and continue to target business with Texas teams and other rights holders that are already contracted to FloSports. Defendants have now acquired the contract with at least one of those Dallas-based partners (the North American Hockey League) for themselves, and they are performing on that violative contract in Texas. The North American Hockey League includes teams based in Amarillo, Corpus Christi, El Paso, North Richland Hills, and Odessa, and streams hockey games and content from Texas. Defendants are also using the infringing marks and trade secrets to interfere with Plaintiffs' business relationships with USA Hockey, the national governing body for ice hockey in the United States, which has teams and members in Texas and

hosts and streams hockey events in Texas; the American Hockey League, which includes the Texas Stars, and the East Coast Hockey League, which includes the Allen Americans Texas team. Defendants' tortious interference and infringing business model includes broadcasting hockey games both from Texas and to subscribers in Texas and by hiring Plaintiffs' employees whose contracts have a nexus with Texas-based FloSports. Accordingly, Defendants are directing purposeful conduct toward Texas, with a foreseeable effect in Texas, through their business communications with these Texas rights holders, Texas venues, and Texas teams and by directing their streaming services toward Texas events and toward Texas subscribers.

14. Defendants have also placed their infringing services and products into the stream of commerce in Texas. Their infringing and unlawful websites interact with subscribers and potential subscribers in Texas who must input their personal and credit card information and agree to certain terms and conditions to subscribe to Defendants' competing service. They are benefitting from the Texas market by streaming Texas events, servicing Texas subscribers, partnering with Texas-based rights holders and the leagues' Texas teams, and directing other business into and from Texas's stream of commerce.

15. Defendants' purposeful availment of the privileges and benefits of doing business in Texas creates sufficient minimum contacts with Texas to support personal jurisdiction over them.

## FACTUAL BACKGROUND

### A. FloSports Buys HockeyTech

16. FloSports is an Austin-based sports media company that is the leading media and technology company for underserved sports communities such as grassroots motorsports, track and field, amateur wrestling, and junior and minor league professional ice hockey. Mark Floreani and his brother founded FloSports in 2006 after competing as college athletes. Today, the company

has almost 400 employees and streams over 50,000 events annually in more than 20 different "verticals" (sports and other activities like marching band) across the United States and around the world. FloSports' coverage includes studio shows, live events, rankings, films, hype videos, articles, statistics/data, and editorial commentary.

17. FloSports' hockey-focused vertical, "FloHockey," licenses media rights from rights holders—hockey leagues, organizations, and teams—to cover and stream their games across web, mobile, and TV screens.

18. In October 2021, FloSports acquired HockeyTech, which at the time was the world's largest live and on-demand hockey streaming platform and sports data provider to teams, leagues, and national organizations. The HockeyTech assets that FloSports purchased included: (1) HockeyTech's marks and other intellectual property; (2) HockeyTV, a video platform that has streamed over 30,000 live hockey games across 75 North American elite and professional leagues; (3) LeagueStat, an enterprise data solution that allows league officials to tabulate the official statistics at hockey games and feed game statistics in real time to the league, teams, and media; (4) websites and a mobile app; and (5) contracts with rights holders such as the North American Hockey League, American Hockey League, Southern Professional Hockey League, Hockey Canada, USA Hockey, Canadian Hockey League, and the United States Hockey League; among other things.

**B. HockeyTech Marks, Trade Dress, and Trade Names**

19. Plaintiffs own the HockeyTech trademarks, including HOCKEYTECH, HOCKEYTV, LEAGUESTAT, and FASTHOCKEY. Plaintiffs and their predecessors have been using these marks and related design marks (the "Plaintiffs' Marks" or the "Marks"), in connection with broadcasting and streaming hockey games and websites that provide information about hockey

leagues, teams and players ("Goods and Services"), in Texas and interstate commerce for at least 9 years and up to 18 years. *See* Ex. A. HOCKEYTECH, LEAGUESTAT, and FASTHOCKEY are federally registered marks. The U.S. Patent and Trademark Office ("PTO") registered the marks HOCKEYTECH and FASTHOCKEY in 2017, making them incontestable. Plaintiffs and their predecessors have also been using the trade name HockeyTech in connection with this business for 18 years. Plaintiffs and their predecessors have been using distinctive trade dress in connection with their goods and services for many years as well.

20. Plaintiffs' use and promotion of their Marks, trade dress and names on or in connection with their Goods and Services have been widespread throughout Texas and the United States, and the Marks are inherently distinctive or have acquired secondary meaning as valuable trademarks. As a result, Plaintiffs have developed substantial rights and goodwill in Plaintiffs' Marks, trade dress and names. Plaintiffs have substantially, exclusively, and continuously used all of their Marks, trade dress and names, such that any of the Marks or the trade dress or names that might be deemed descriptive have acquired secondary meaning. As a result, Plaintiff has the exclusive right to use its Marks in the United States for the Goods and Services.

21. As a result of Plaintiffs' use and promotion, their Marks, trade dress and trade names have achieved widespread and favorable recognition in Texas and throughout the United States as the best way to access hockey content, both amateur and professional.

### C. Defendants' Misconduct

### 1. Ruskin's Background

22. Ruskin has long history in the hockey streaming business. He founded a company called FASTHockey in 2005, which became the dominant provider of live and on-demand webcasting for amateur hockey. HockeyTech purchased FASTHockey, including its trademarks and other intellectual property, in 2015.

23. Ruskin served as the President and then the Chairman of the Board of Advisors for HockeyTech. While at HockeyTech, Ruskin was deeply involved in developing the LeagueStat product. Ruskin left HockeyTech in 2018.

24. FloSports then hired Ruskin as a consultant to help grow its hockey platform, FloHockey. Mr. Ruskin served in that capacity from August 2019–August 2020 and again in August 2021 during FloSports' purchase of HockeyTech.

25. As an advisor, Ruskin traveled to FloSports' Austin headquarters at least three times to meet with FloSports employees. He attended meetings in Dallas, Texas with FloSports and its rights holders United States Hockey League and North American Hockey League (a contract Defendants eventually stole).

### 2. Defendants are stealing trade secrets, trademarks, trade names and trade dress

26. In October 2022, Ruskin founded Hockey Technology—intentionally leveraging the HockeyTech name and Mark. Just like HockeyTech, Hockey Technology is a platform for streaming hockey and provides scoring, statistics, and hockey analysis. The only difference between Hockey Technology and HockeyTech is that, instead of licensing media rights and streaming on one platform, Hockey Technology sells its service and a customized "white label"

platform to hockey leagues and organizations who then provide it directly to consumers under their own brands, co-branded as HockeyTV.

27. To recreate HockeyTech, Ruskin hired former HockeyTech USA and FloSports employee, Dave DesRoches. DesRoches was a Product Manager for the LeagueStat scoring and statistics solution and eventually took on responsibility for customer success and global partnerships for HockeyTech USA. He is highly trained in LeagueStat and the HockeyTech platforms. DesRoches was also privy to Plaintiffs' hockey strategy, including its "Hockey Roadmap." Undoubtably, Defendants hired DesRoches to use the knowledge he acquired from HockeyTech USA and FloSports to build the virtually identical product they are now selling. In addition to DesRoches, Defendants hired former FloSports employee, Eric Horn, to be the streaming operations manager for Hockey Technology.

28. In August 2023, Plaintiffs became aware that DesRoches was soliciting Plaintiffs' rights holders on behalf of Defendants in violation of his non-solicitation agreement with HockeyTech's subsidiary, HockeyTech USA. Plaintiffs wrote DesRoches and demanded he immediately stop violating this agreement. Plaintiffs also wrote to Ruskin and requested assurances that he understood DesRoches's contractual obligations and was not using Plaintiffs' confidential, proprietary or trade secret information. Ex. B, *Aug. 24 Letter*. Defendants refused. Defendants continue to tortiously interfere with the non-solicitation agreement between Plaintiffs and DesRoches.

29. That same month, Plaintiffs learned that Defendants were operating under the name "Hockey Technology"—an effort to confuse and deceive rights holders and prospective customers into falsely believing Hockey Technology was associated with Plaintiffs. Plaintiffs have contacted Defendants and demanded they cease using the name. Ex. C, *Sept. 1 Letter*. Nonetheless,

Defendants continue to misappropriate Plaintiffs' name and Marks.

30.     Since launching Hockey Technology, Defendants have been poaching Plaintiffs' rights holders by selling this "new" nearly identical solution under the Hockey Technology name and mark and the HOCKEYTV Mark. To date, Plaintiffs have discovered that Defendants have interfered with their business relationships with the following rights holders:

- North American Hockey League (NAHL)—one of the top junior hockey leagues in the United States, which is headquartered in Dallas, Texas, includes teams based in Amarillo, Corpus Christi, El Paso, North Richland Hills, and Odessa, and streams hockey games and content from Texas;
- USA Hockey—the national governing body for ice hockey in the United States, which is headquartered in Colorado Springs, Colorado, but has teams and members in Texas and hosts and streams hockey events in Texas;
- Superior International Junior Hockey League (SIJHL)—a junior hockey league operating in Canada, Minnesota, and Wisconsin; and
- Private schools with elite hockey programs, Shattuck-St. Mary's School (Minnesota) and Dexter Southfield Academy (Massachusetts).

31.     Defendants' interference has already caused Plaintiffs over $2.6 million in damages. Further harm is imminent as Defendants are in talks with more of Plaintiffs' rights holders, including the United States Premier Hockey League, the Alberta Junior Hockey League, the American Hockey League, and the East Coast Hockey League.

32.     The platform Defendants have built for their customers is identical to the HockeyTech platform, and it uses the Plaintiffs' Marks and trade dress. The website they built for Shattuck-St. Mary's has HockeyTV in its domain name, ssmhockeytv.com, and, until recently, even contained the HockeyTV logo:



Ex. D.

33.     Defendants have also launched a mobile app that is virtually identical to the HockeyTV mobile app. The only way Defendants could have built an identical mobile app is by using the HockeyTV code base or by going screen-by-screen through the HockeyTV app and replicating the trade dress.

## CAUSES OF ACTION

### A. Trademark Infringement

34. Defendants have willfully infringed Plaintiffs' rights in the Marks. The Marks are inherently distinctive or have achieved secondary meaning. HockeyTech has been using the HockeyTech word Mark and HockeyTV word and design Marks throughout Texas and the United States since long before Defendants started using "Hockey Technology" or "HockeyTV." Defendants were well aware of Plaintiffs' prior rights in Plaintiffs' Marks when Defendants adopted and began using the infringing Hockey Technology and HockeyTV marks for their business, website, and platform. Defendants' use of Hockey Technology and HockeyTV has deceived and confused consumers and is likely to continue deceiving, causing confusion, or causing mistake among consumers as to the source or origin of the parties' respective goods or services, which are sufficiently related that consumers are likely to believe they come from the same source, or are sponsored by or affiliated with the same source. Plaintiffs have not authorized or consented to Defendants' use of Hockey Technology or HockeyTV, and Plaintiffs have no control over the nature or quality of goods and services Defendants offer, so the confusion Defendants create causes Plaintiffs irreparable harm.

35. Defendants' conduct violates statutory and common law, including but not limited to 15 U.S.C. §§ 1114, 15 U.S.C. § 1125(a), and TEX. BUS. & COMM. CODE § 16.102. Defendants should be enjoined from further acts of infringement, ordered to deliver up for destruction all articles that are in violation of Plaintiffs' rights, and held liable for disgorging their profits, Plaintiffs' damages, the costs of this action, attorneys' fees and—since Defendants are acting in bad faith, deliberately, willfully and with malice or gross negligence—exemplary damages.

### B. Unjust Enrichment

36. Defendants have unjustly enriched themselves by using, infringing and diluting the Plaintiffs' Marks, misappropriating Plaintiffs' trade secrets, tortiously interfering with Plaintiffs' contracts and relationships, and through their other unlawful conduct. Defendants have obtained benefits from Plaintiffs by taking undue advantage of them and have wrongfully secured a benefit or passively received one that would be unconscionable to retain.

37. Defendants must disgorge all profits and other benefits Defendants received from their wrongful conduct.

### C. Trade Secret Misappropriation

38. Upon information and belief, Defendants have misappropriated Plaintiffs' trade secrets, including their "Hockey Roadmap," and the schema and rules underlying both the HockeyTV website and mobile app, in violation of the federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act. *See* 18 U.S.C. § 1836; TEX. CIV. PRAC. & REM. CODE § 134A.002.

39. Upon information and belief, Defendants continue to actively violate the trade-secret statutes, and their misconduct should be enjoined. Defendants are using Plaintiffs' technology to try to flip Plaintiffs' rights holders to their own platform, consciously disregarding Plaintiffs' rights. Defendants' conduct was intentional, resulting from their conscious disregard of Plaintiffs' rights. In addition to an injunction, Defendants should answer in damages. 18 U.S.C. § 1836(b)(3); TEX. CIV. PRAC. & REM. CODE § 134A.004. And in addition to or in the alternative damages for actual loss, Plaintiffs are also entitled to profit disgorgement, royalties, and the avoided costs of development and other ill-gotten gains. Because Defendants' misappropriation was willful and malicious, Plaintiffs are also entitled to an award of exemplary damages and attorneys' fees. 18 U.S.C. § 1836(b)(3)(C)–(D); TEX. CIV. PRAC. & REM. CODE § 134A.004–.005.

### D. Tortious Interference with HockeyTech USA's Contract with DesRoches

40. Defendants intentionally and tortiously induced DesRoches to breach his contract with HockeyTech USA.

41. Defendants have been on notice of DesRoches's covenants not to compete or solicit. Yet Defendants used DesRoches to solicit Plaintiffs' rights holders and to misappropriate Plaintiffs' confidential, proprietary and trade secret information.

42. Defendants' tortious interference has caused substantial damage to Plaintiffs, and it continues to cause them damage.

### E. Tortious Interference with Current and Prospective Business Relationships

43. Defendants have intentionally and tortiously interfered with Plaintiffs' business relationships with current and prospective rights holders, and they continue to do so.

44. Plaintiffs have valid contracts and continuing business relationships with their rights holders. Defendants have actual knowledge of those contracts/relationships, yet they have induced and continue to induce Plaintiffs' rights holders to breach those contracts. Defendants' interference with those relationships is intentional.

45. Defendants' tortious interference has caused substantial damage to Plaintiffs, and it continues to cause them damage.

### F. Joint and Several Liability

46. Defendants Ruskin and Hockey Technology are jointly and severally liable because they aided and abetted each other in carrying out the tortious acts described above. Defendants also acted with wrongful intent and/or knowledge that their conduct was a breach of their duties, and they provided substantial assistance and encouragement to each other in their conduct. Defendants are jointly liable for the others' conduct because they acted as a joint venture to misappropriate

Plaintiffs' trade secrets, unfairly compete, infringe Plaintiffs' trademarks, and tortiously interfere with the contracts pleaded above. Ruskin and Hockey Technology are also jointly and severally liable for the indivisible injury caused by these tortious acts, and each contributed to the injury caused by each other.

## VIII.   REQUEST FOR INJUNCTIVE RELIEF

47.     Plaintiffs have shown a probable right to relief on their claims.

48.     Federal and state law expressly permit this Court to enter preliminary injunctive relief to enjoin the Defendants' actual and threatened dilution or infringement of Plaintiffs' name and Marks. *See* 15 U.S.C. § 1116(a); TEX. BUS. & COM. CODE § 16.103. If Defendants are not restrained and enjoined from diluting and infringing upon Plaintiffs' Marks, Plaintiffs will suffer probable, imminent and irreparable injury. The full extent of damages that Defendants have and will cause HockeyTech cannot be fully measured or compensated in money damages.

49.     This Court also has authority to enter preliminary injunctive relief to enjoin the actual or threatened misappropriation of Plaintiffs' trade secrets. 18 U.S.C. § 1836(b)(3)(A); TEX. CIV. PRAC. & REM. CODE § 134A.003. If Defendants are not restrained and enjoined from further misappropriating Plaintiffs' trade secrets, Plaintiffs will suffer probable, imminent and irreparable injury. The full extent of damages that Defendants have and will cause Plaintiffs cannot be fully measured or compensated in money damages.

50.     If Defendants are not restrained and enjoined from tortiously interfering with Plaintiffs' business relationships and contracts, Plaintiffs will suffer probable, imminent and irreparable injury. The full extent of damages that Defendants have and will cause Plaintiffs cannot be fully measured or compensated in money damages.

51.     The loss to Plaintiffs if Defendants are not enjoined greatly outweighs any harm to

Defendants by imposition of an injunction. An injunction will promote equity and justice and is not adverse to the public interest.

52. Plaintiffs can demonstrate a probable right of recovery with respect to their claims.

53. Plaintiffs are willing to post a bond.

54. Plaintiffs respectfully request that this Court enter a temporary injunction that:

   a. enjoins Defendants, their officers, agents, servants, consultants, contractors, employees, attorneys, and any person acting in concert or participation with them, from using Hockey Technology, or any other mark or name that includes HockeyTech, HockeyTV, LeagueStat, FASTHOCKEY, or any variation thereof or that is otherwise likely to cause confusion, mistake, deception, or dilution with respect to Plaintiffs' Marks or name or trade dress in any manner, whether by the use of the unauthorized domain names, the unauthorized web sites, or otherwise;

   b. orders Defendants to remove from commerce any advertisement, promotion, offer for sale, or other article displaying Hockey Technology, or any other mark or name that includes HockeyTech, HockeyTV, LeagueStat, FASTHOCKEY, or any variation thereof or that is otherwise likely to cause confusion, mistake, deception, or dilution with respect to Plaintiffs' Marks or name or trade dress in any manner, including but not limited to Defendants' websites, social media, and accounts with third parties;

   c. enjoins Defendants, their officers, agents, servants, consultants, contractors, employees, attorneys, and any person acting in concert or participation with them, from disclosing to any other person or entity, or using, replicating, or otherwise

   misappropriating for their own individual or collective use or benefit (or for the benefit of any person or entity other than Plaintiffs), any of Plaintiffs' trade secrets;

  d. orders Defendants to return or destroy all Plaintiffs' trade secrets in their possession; and

  e. enjoins Defendants from interfering with Plaintiffs' contracts and business relationships.

55. Upon final trial, this Court should enter an order permanently enjoining Defendants from the same behavior and ordering Defendants to deliver up for destruction all articles that are in violation of Plaintiffs' rights.

## JURY TRIAL

56. Plaintiffs demand a trial by jury on all issues triable to a jury.

## PRAYER

Plaintiffs respectfully request preliminary and permanent injunctive relief and disgorgement of Defendants' profits as well as compensatory damages, nominal damages, statutory damages, the costs of this action, attorneys' fees and exemplary damages, and such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

Karen C. Burgess
State Bar No. 00796276
Email: kburgess@burgesslawpc.com
Stacy Rogers Sharp
State Bar No. 24052109
Email: ssharp@burgesslawpc.com
Katie Dolan-Galaviz
State Bar No. 24069620
Email: kgalaviz@burgesslawpc.com
**BURGESS LAW PC**
404 West 13th Street
Austin, Texas 78701-1825
Telephone: (512) 482-8808
Facsimile: (512) 900-6325

Dated: January 5, 2024

By: */s/ Karen C. Burgess*
    Karen C. Burgess
    State Bar No. 00796276

**ATTORNEYS FOR PLAINTIFFS HOCKEYTECH, INC., HOCKEYTECH USA, LLC, AND FLOSPORTS, INC.**

## CERTIFICATE OF SERVICE

  I hereby certify that, on the 5th day of January, 2024, the foregoing was electronically filed with the Court by using the Western District of Texas's CM/ECF filing system, which provided notice of the filing to all CM/ECF participants.

              */s/ Karen C. Burgess*
              Karen C. Burgess